UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SUZANNE VENTURA,

                            Plaintiff,

v.                                                    6:15-CV-00833
                                                      (MAD/TWD)
CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                            Defendant.
_____

APPEARANCES:                          OF COUNSEL:

LAW OFFICES OF PETER W. ANTONOWICZ     PETER W. ANTONOWICZ, ESQ.
*Counsel for Plaintiff*
148 West Dominick Street
Rome, New York 13440


HON. RICHARD S. HARTUNIAN             LAUREN E. MYERS, ESQ.
United States Attorney for the        Special Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL             STEPHEN P. CONTE, ESQ.
Social Security Administration        Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the undersigned for report and recommendation by the

Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b)

(2013) and Northern District of New York Local Rule 72.3(d). This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. For the reasons discussed below, the Court recommends that the case be remanded to the Commissioner for further administrative proceedings consistent with the findings set forth below.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is presently fifty-three years old with a birth date of November 7, 1962. (Administrative Transcript at 109.)[1] Plaintiff achieved a tenth grade level in high school and subsequently received her GED. (T. at 81.) Plaintiff's prior work history included bakery worker, housekeeper, and placing inserts in printed products. (T. at 68-69, 98.) In her application for disability benefits, Plaintiff alleged disability due to depression, anxiety, thyroid condition, kidney problems, renal failure, and severe hearing loss. (T. at 110.)

On October 2, 2012, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (T. at 208-12.) Plaintiff filed a Title II application for disabled widow's benefits on the same date. (T. at 222-23.) Plaintiff applied for supplemental security income on October 12, 2012 (T. at 213-21), and she alleged disability beginning May 15, 2012, in all three applications. Plaintiff's claims were initially denied on February 27, 2013. (T. at 106-08.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on March 18, 2013. (T. at 159-60.) A video conference hearing was held before ALJ Hortensia Haaversen

---

[1] The Administrative Transcript is found at Dkt. No. 10. Citations to the Administrative Transcript will be referenced as "T" and the page numbers as set forth therein rather than the numbers assigned by the CF/ECM docketing system.

on November 13, 2013.  (T. at 64-105.)  Plaintiff was represented by an attorney at the hearing.

(T. at 64.)

In her November 25, 2013, decision, the ALJ determined that Plaintiff was not disabled

on all three of her applications.  (T. at 56.)  On January 21, 2014, Plaintiff submitted a request for

review of the ALJ's decision to the Appeals Council.  (T. at 38-40.)  Plaintiff submitted

additional medical evidence for consideration by the Appeals Council.  (T. at 1,19.)  The ALJ's

decision became the final decision of the Commissioner when the Appeals Council denied

Plaintiff's request for review on May 21, 2015.  (T. at 16-18.)  Plaintiff commenced this timely

action in the United States District Court for the Northern District of New York on July 8, 2015.

(Dkt. No. 1.)

## II.     APPLICABLE LAW

### A.     Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that he or she is "unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2006).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2016). Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments; (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments; (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014.) "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540

U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v.

Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).

If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-

Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.* (quoting

*Perez,* 77 F.3d at 46).

B.      **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision.

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2012); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). If supported by substantial evidence, the ALJ's findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may

differ from the [ALJ's]." *Rosado,* 805 F. Supp. at 153. A reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III. THE ALJ'S DECISION

In her November 25, 2013, Decision, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of May 15, 2012. (T. at 47.) The ALJ found at step 2 of the sequential evaluation that during the period in question, Plaintiff had the severe impairments of depression and anxiety (20 CFR 404.1520(c) and 416.920(c)). (T. at 51.) At step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of listings 12.04 or 12.06 in the listing of impairments set forth at 20 C.F.R. Part 404, Subpart P, Appendix I . (T. at 52-53.)

The ALJ then concluded that Plaintiff retained the functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that: she can lift and carry 20 pounds occasionally and 10 pounds frequently; she can stand or walk for about six hours in an eight-hour workday; she can sit for about six hours in an eight-hour workday; and she should not work at unsecured heights and therefore should not climb ladders, ropes, or scaffolds. (Based on the January 30, 2013 opinion of Tanya Perkins-Mwantuali, M.D., at Exhibit 4F). From a mental standpoint, she is limited to simple and routine tasks in a low stress work environment meaning that it does not require production pace work and requires only occasional changes in the work setting or in decision making (Based in part on the February 21, 2013 assessment of Juan Echevarria, M.D. at Exhibits 4A-6A).

(T. at 49-50.)

6

At step 4, the ALJ concluded that Plaintiff was able to perform her past relevant work as a housekeeper.  (T. at 59.)  The ALJ found in the alternative that considering Plaintiff's age, education, work experience, and RFC, there were significant other jobs that existed in significant numbers in the national economy that she could perform such as garment sorter, laundry folder, and bagger.  (T.  at 59-60.)

The ALJ concluded that Plaintiff was not disabled.  (T. at 60.)

## IV.    THE PARTIES' CONTENTIONS

Plaintiff's new counsel, whom she initially retained for review of the ALJ's decision by the Appeals Council, claims that the Defendant erred by (1) failing to consider and address additional evidence submitted to the Appeals Council subsequent to the ALJ's decision; (2) failing to find that Plaintiff's condition meets the requirements for a listed impairment; (3) failing to properly attribute weight to opinion evidence; and (4) improperly evaluating Plaintiff's credibility.  (Dkt. No. 16 at 1[2].)

Defendant contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence, and thus should be affirmed.  (Dkt. No. 17 at 3.)

## V.    DISCUSSION

### A.    Additional Evidence Submitted to the Appeals Council

Plaintiff claims Defendant erred by failing to consider and address additional evidence submitted to the Appeals Council by her counsel subsequent to the ALJ's decision.  (Dkt. No. 16 at 10-13.)

_____

[2]  Page references to documents identified herein by docket number are to the numbers assigned by the CM/ECF docketing system.

1.    <u>Additional Evidence</u>

In its May 21, 2015, Notice of Appeals Council Action, the Appeals Council stated that it had considered the additional evidence submitted by Plaintiff that was listed on the Order of Appeals Council Action in denying the appeal and had concluded that it did not provide a basis for changing the ALJ's decision.  (T. at 17.)  The additional evidence listed included a May 5, 2014, record from Nurse Practitioner Linda Talarico ("NP Talarico" or "Talarico"), from Mental Health Connection, who had begun treating Plaintiff for her mental health impairments in July 2012.  (T. at 13-15, 19.)

In the May 5, 2014, Notification of Temporary Assistance Work Requirement's Determination (Exempt) ("Notification"), NP Talarico identified Plaintiff's mental impairments as depressive disorder, anxiety disorder, and post traumatic stress disorder ("PTSD"), and indicated Plaintiff was receiving psychotherapy.  (T. at 424-26.)  Talarico listed Plaintiff's medications as including Elavil, 50 mg; Seroquel, 25 mg; Zoloft, 100 mg; and Xanax, 25 mg three times per day.  *Id*.  Talarico indicated that she had been treating Plaintiff for two years, Plaintiff suffered from chronic instability, and no work was advised in any capacity.  (T. at 426.)

In identical May 28, 2015, and June 3, 2015, letters to the Appeals Council following issuance of the denial of Plaintiff's appeal, Plaintiff's counsel wrote that his records revealed that on November 13, 2014, he had faxed the Council a number of additional documents not included on the list and had re-faxed those documents to the Council two days before his letter.  (T. at 1, 8.)  One of the documents was a September 26, 2014, Medical Source Statement (Mental) from LMSW Walter Misiaszek ("LMSW Misiaszek" or "Misiaszek"), also from Mental Health Connection, who had been Plaintiff's psychotherapist since July of 2012. (Dkt. No. 10 at 2; T. at

8

25-26, 84-86.)  The Statement indicates that opinions expressed therein pertained to the period of time from January 1, 2012, through the present, and provided treatment history dates as July 15, 2012, to the present.  (T. at 25-26.)

Misiaszek also diagnosed Plaintiff with depression, anxiety, and PTSD, which he described as "chronic with minimal recovery."  (T. at 26.)   Misiaszek assessed Plaintiff as having extreme limitations in following rules; relating to acquaintances and familiar people; dealing with the public; use of judgment; relating to authority figures; dealing with stress; functioning independently; maintaining attention/concentration; maintaining personal appearance; behaving in an emotionally stable manner; relating predictably in social situations; and demonstrating reliability.  (T. at 25.)

Misiaszek opined that Plaintiff's depression, fatigue, and concentration-deficits were incapacitating and would cause her to be off-task at least fifty percent of the time in an eight hour block of time.  (T. at 26.)  He estimated Plaintiff would likely be absent from work more than four days per month.  *Id*.  Misiaszek described other experiences and limitations experienced by Plaintiff as a result of her condition as severe depression, anxiety, and vegetative symptoms.  *Id*. He described the limitations and clinical findings supporting his assessment as including vegetative symptoms, difficulty keeping up with the activities of daily living, minimal socialization, and isolation.  *Id*.

2. Consideration of the Additional Evidence

A claimant may submit additional evidence to the Appeals Council when seeking review of an ALJ's decision.  *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. §§ 404.970(b), 416.1470(b)).  "[I]f new and material evidence is submitted, the Appeals Council

shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 416.1470(b); *see also Perez*, 77 F.3d at 44 ("If the new evidence relates to a period before the ALJ's decision, the Appeals Council shall evaluate the entire record including the new and material evidence submitted . . . and then review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record.").

For evidence to be considered "new," the court must find that the evidence is not merely "cumulative of what is already in the record." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (citation omitted). Evidence is "material" if it is both "relevant to the claimant's condition during the time period for which benefits were denied," and "probative." *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) (quoting *Tirado*, 842 F.2d at 597). For evidence to be considered probative there must be "a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide the claimant's application differently." *Id*. "[M]edical evidence generated after the ALJ's decision [can] not be deemed irrelevant solely because of timing, [as] subsequent evidence of the severity of a condition suggests that the condition may have been more severe in the past than previously thought." *Suttles v. Colvin*, N. 15-3803, ___ F. App'x ___, 2016 WL 3573468 at * 2 (2d Cir. June 30, 2016) (quoting *Williams v. Comm'r Soc. Sec.*, 236 F. App'x 641, 644 (2d Cir. 2007)); *Pollard v. Halter*, 377 F.3d 183, 193-94 (2d Cir. 2004) (finding that the district court had erred in finding new evidence not to be material where it "based its finding of non-materiality on the fact that the new evidence did not explicitly refer to the relevant time period.").

When the Appeals Council fails to consider new and material evidence relating to the

relevant time period, "the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence." *See Shrack v. Astrue*, 608 F. Supp. 2d 297, 302 (D. Conn. 2009). If the Appeals Council considers the additional evidence and denies review of the ALJ's decision, the additional evidence "becomes part of the administrative record for judicial review." *Perez*, 77 F.3d at 45. In such a case, the district court "simply review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the Secretary." *Id*.; *accord Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015).

The Appeals Council confirmed that it had considered NP Talarico's May 5, 2014, Notification. (T. at 17, 19.) There is, however, no evidence in the administrative record establishing that the Appeals Council received LMSW Misiaszek's September 26, 2014, Medical Source Statement (Mental), reviewed it before issuing its decision denying review the ALJ's decision, and simply failed to include it on the list. Because Plaintiff's counsel's records reflect that he faxed Misiaszek's Statement to the Appeals Council on November 13, 2014, the Court will, solely for purposes of this appeal, treat the Statement as though it had been received and considered by the Appeals Council, and to the extent appropriate will consider the Statement, along with NP Talarico's May 5, 2014, Notification as a part of the administrative record on this appeal.

**B.  Weight Given to Mental Health Source Statements by the ALJ**

Another of the claims raised by Plaintiff on appeal is that the ALJ erred in the manner in which she attributed weight to opinion evidence. (Dkt. No. 16 at 16-19, 53-58.) More specifically, Plaintiff challenges the "limited weight" assigned by the ALJ to the opinion

evidence in the medical source statements of each one of the mental health professionals who examined and/or treated Plaintiff.[3]  *Id.*

1.   NP Talarico's and LMSW Misiaszek's Medical Source Statements (Mental)

The administrative record reveals that Plaintiff did not have a treating physician for her mental health impairments.  Rather, the record reveals that Plaintiff was treated by NP Talarico, who prescribed medication for what she had diagnosed as Plaintiff's depression, anxiety, and PTSD.  (T. at 84-86; 361-66.)  Plaintiff engaged in psychotherapy with LMSW Misiaszek.  (T. at 84-86, 351-66.)

LMSW Misiaszek submitted an April 17, 2013, Mental Capacity Assessment, and he and NP Talarico submitted an October 4, 2013, joint Medical Source Statement of Ability to Do Work-Related Activities.  (T. at 347-49, 393-95.)  In his April 17, 2013, Mental Capacity Assessment, under the heading "Understanding & Memory," LMSW Misiaszek found that Plaintiff had a moderate limitation on the ability to understand and remember very short and simple instructions, and an extreme limitation on the ability to remember locations and work-like procedures and ability to understand and remember detailed instructions.  (T. at 347.)  The medical/clinical findings supporting the assessment were identified as "very poor focus,

---

[3]  The ALJ granted "some weight" to the February 21, 2013, opinion of non-examining State psychological consultant, Juan Echevarria, M.D., who found Plaintiff to have moderate difficulties with social functioning and concentration, persistence or pace.  (T. at 52.)  The ALJ found that Dr. Echevarria's opinion was supported by treatment records to "some extent" but determined that Plaintiff had no more than mild limitation in social functioning because she was described by NP Talarico as pleasant and "overall upbeat" on February 11, 2013; she went to church occasionally if she could get there; and she had traveled unaccompanied on a Greyhound bus from Florida for twenty-eight hours after Christmas 2012, during which time there were presumably many other passengers, and Plaintiff would have had to deal with the bus driver on one or more buses and the ticket agent.  (T. at 48, 52.)

concentration, retaining information, short-term memory." *Id.*

Under the heading "Sustained Concentration & Persistence, LMSW Misiaszek found that Plaintiff had a marked limitation in carrying out short and simple instructions and an extreme limitation in the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or in proximity to others without being distracted; the ability to make simple work-related decisions; the ability to complete a normal workday without interruptions from psychologically based symptoms; and the ability to perform at a consistent pace with a standard number and length of rest periods. (emphasis in original) (T. at 348.) Misiaszek indicated that in his professional opinion, Plaintiff would likely have four plus absences in an average month. *Id.* The medical/clinical findings supporting Misiaszek's assessment were identified as "chronic cognitive impairment, anxiety, depressive symptoms." *Id.*

Under the heading "Social Interaction," LMSW Misiaszek found that Plaintiff had a slight limitation in her ability to maintain socially appropriate behavior and to adhere to the basic standards of neatness and cleanliness. *Id.* He found that Plaintiff had a moderate limitation in her ability to ask simple questions or request assistance and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and an extreme limitation in the ability to interact appropriately with the general public. *Id.* Misiaszek described the medical/clinical findings that supported his assessment as "gets very nervous, paranoid in crowds, shuts down, has panic, anxiety around other people." *Id.*

13

Under the heading "Adaption," LMSW Misiaszek found that Plaintiff had no limitation on the ability to be aware of normal hazards and take precautions; a moderate limitation in the ability to set realistic goals or make plans independently of others; and an extreme limitation on the ability to respond appropriately to changes in the work setting and travel in unfamiliar places or use public transportation. (T. at 349.)

In their October 14, 2013, joint Medical Source Statement, NP Talarico and LMSW Misiaszek described Plaintiff as having a mild limitation on her ability to understand and remember simple instructions. *Id*. at 393. However, Plaintiff was assessed as having extreme limitations in carrying out simple instructions; the ability to make judgments on simple work-related decisions; understand and remember complex instructions; carry out complex instructions; and the ability to make judgments on complex work-related decisions. *Id*. The factors identified as supporting the assessment were "very poor short-term memory, very poor focus, concentration, distracted easily, gets very nervous and overwhelmed easily, panic attacks." *Id*.

Plaintiff was described as having an extreme limitation in interacting appropriately with the public; interacting appropriately with supervisor(s); interacting appropriately with co-workers; and responding appropriately to usual work situations and to changes in a routine work setting. (T. at 394.) The factors supporting the assessment were identified by her as "confusion can't do changes like that anymore. Gets very nervous, agitated." *Id*. (internal quotation marks omitted).

Other capabilities affected by Plaintiff's impairment were identified as "difficulty with daily activities, very depressed, somatic, vegetative symptoms." *Id*. The factors supporting the

assessment were identified as severe depression, PTSD, and severe anxiety. *Id.* It was noted that Plaintiff had no alcohol or substance abuse issues. *Id*.

2.   Impact of NP Talarico's and LMSW Misiaszek's Status as "Other Sources" on the Weight Attributed to Their Opinions by the ALJ

In her decision, the ALJ gave "little weight" to the April 17, 2013, and October 4, 2013, medical source statements from LMSW Misiaszek and NP Talarico. (T. at 53-54.) In each case, one of the reasons articulated by the ALJ for giving them little weight was that neither LMSW Misiaszek nor NP Talarico was an acceptable medical source as stated in 20 CFR §§ 404.1513 and 416.913. *Id.* While both LMSW Misiaszek and NP Talarico fall within the category of "other source" in the foregoing regulations, that is not reason enough to discount their opinions, especially when there is no treating physician regarding Plaintiff's mental health impairments. *See Bedell v. Comm'r of Soc. Sec.*, No. 1:12-cv-126-jgm, 2014 WL 257856, at * 10 (D. Vermont Jan. 23, 2014). The ALJ does not appear to have given consideration to the implications of Plaintiff having had no treating physician for her mental health impairments in assessing the weight to be afforded to NP Talarico's and LMSW Misiaszek's in her decision.

SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006) explains that medical sources like nurse practitioners and licensed clinical social workers, who are not "acceptable medical sources" under the regulations "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinion from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." *Id*. at * 3.

3.     NP Talarico's Treatment Records and LMSW Misiaszek's Individualized
       Action Plan Revisions/Reviews ("IAPR")

The ALJ found most significant to her weight assessment with respect to NP Talarico's

and LMSW Misiaszek's medical source statements was the inconsistency between their opinions

and treatment notes.  (T. at 53-54.)  The evidence in the administrative record reveals that

Plaintiff began treatment with NP Talarico in July 2012 and was still treating with her at the time

of the hearing on November 13, 2013.  (T. at 13-15, 84-85, 292.)  However, the administrative

record is limited to Talarico's psychiatric evaluation of Plaintiff on July 27, 2012, and her

treatment notes for visits on August, 2012, September 13, 2102, December 13, 2012, March 11,

2013, and April 22, 2013.  (T. at 361-66.)  The record does not contain any treatment records

from RN Talarico subsequent to April 22, 2013, and up to the time of her hearing on November

13, 2013.

Plaintiff began therapy with Misiaszek in or about July 2012.  (T. at 366.)  According to

Plaintiff, she continued seeing Misiaszek through the time of her hearing.  (T. at 85.)  LMSW

Misiaszek's IAPRs dated October 14, 2012, January 14, 2013, April 8, 2013, and July 11, 2013,

are included in the record.  (T. at 359-60.)  The record does not include any IAPRs or other

treatment records from LMSW Misiaszek subsequent to July 11, 2013, and up to the time of

Plaintiff's hearing.

The ALJ found LMSW Misiaszek's April 17, 2013, medical source statement to be

inconsistent with his "treatment notes" because his January 4, 2013, IAPR indicates that the

Plaintiff had reported that medication was helping her cope with her issues, and she was doing

very well on her medications.  (T. at 53-54.)  The ALJ neglects to note that Misiaszek's January

16

4, 2013, IAPR listed Plaintiff's self-reported depression as five on a scale of one to ten; that his

April 14, 2013, IAPR discloses that Plaintiff had reported her depression and anxiety as eight on

a scale of one to ten; and that in his IAPR dated July 11, 2013, the last one in the administrative

record, the therapist noted that on June18, 2013, Plaintiff had reported a ten on a scale of one to

ten for both anxiety and depression, secondary to being very physically ill, suggesting that the

possibility exists that there was a continuing worsening of Plaintiff's mental health impairments

between July 11, 2013, and her November 13, 2013, hearing.  (T. at 351.)

The ALJ also found the opinions in the October 4, 2013, joint medical source statement

submitted by NP Talarico and LMSW Misiaszek entitled to little weight because of their

inconsistency with NP Talarico's treatment notes.  (T. at 53-54.)  The ALJ specifically referenced

NP Talarico's February 11, 2013, treatment note in which she noted that Plaintiff was improving

and that her insight, judgment, and impulse control were good during the session.  *Id*.  The ALJ

stated generally that NP Talarico's and LMSW Misiaszek's treatment notes Plaintiff's mental

status exams were "remarkably normal"; Plaintiff was improving over time and doing well on

her medications; she consistently denied hallucinations; and paranoia was rarely noted after her

initial evaluation in July 2012.  (T. at 53-54.)

The Court notes that NP Talarico's treatment notes for August 24, 2012, September 13,

2012, December 13, 2012,  and February 11, 2013, all reported that Plaintiff was feeling much

better and doing well on her medication; was no longer mentioning people spying on her as she

had at her initial evaluation; was not exhibiting paranoia; was not overtly depressed; her mood,

affect, insight, and judgment were good; and that she was at times smiling and overall euthymic.

(T. at 363-65.)  However, the Court also notes, as the ALJ's decision failed to do, that when

Plaintiff saw NP Talarico on March 11, 2013, she was highly emotional, her mood lability extreme, and she reported that her depression and anxiety were high.[4] (T. at 362.) According to the treatment note, Plaintiff had reported that her depression and anxiety were an eight on a scale of one to ten on March 4, 2013, and Talarico found them to be even higher. *Id*. Plaintiff cried during the entire session. *Id*. Plaintiff told Talarico that she was unable to work. *Id*. Plaintiff was receptive to continuing therapy, and Zoloft, an antidepressant, was added to her medication. *Id*. The last treatment note by Talarico in the administrative record is dated April 22, 2013. (T. at 361.) Plaintiff complained of overall body aches that were keeping her awake and indicated she would be seeing a rheumatologist soon. *Id*. NP Talarico noted that Plaintiff's insight was improving and impulse control good. *Id*. She also noted that Plaintiff denied auditory or visual hallucinations. *Id*. Talarico discontinued the Remeron, continued Plaintiff on BuSpar and Zoloft, and prescribed trazodone. *Id*. Because NP Talarico's treatment records end on April 22, 2013, the record does not reflect whether Plaintiff's mental state rebounded following her last recorded visits with Talarico or continued on a downward spiral as might be suggested by the list of medications Plaintiff was taking at the time of the hearing. Those medications included alprazolam (Xanax), .25 mg three times a day; and quetiapine fumarate (Seroquel), 50 mg per day, both of which had been prescribed on September 2, 2013.[5] (T. at 292.)

_____

[4] See *Tim v. Colvin*, No.6:12-cv-1761 (GLS/ESH), 2014 WL 838080, at * 7 (N.D.N.Y. March 14, 2014) ("while administrative law judges are entitled to resolve conflicts in the evidentiary record, they cannot pick and choose only evidence that supports their particular conclusions.") (citing *Smith v. Bowen*, 687 F. Supp. 902, 904 (S.D.N.Y. 1988)).

[5] Alprazolam (Xanax) is described in the PDR is a benzodiazepine used to treat anxiety disorders. *See* http://www.pdr.net/drub-summary/Xanax-alprazolam-1873.31 (last visited 8/29/16). Quetiapine fumarate (Seroquel) is described in the PDR as an atypical antipsychotic

The ALJ likewise failed to note that while LMSW Misiaszek had written in his October 14, 2012, IAPR that Plaintiff was doing well on BuSpar and Remeron and had self-reported a one on a scale of one to ten of intensity for both depression and anxiety, in his January 14, 2013, IAPR, Misiaszek wrote that Plaintiff's self-reported depression and anxiety had climbed to five on a scale of one to ten.  (T. at 53-54, 357, 359.)  Plaintiff's self-reported depression and anxiety levels were noted to have risen again to eight on a scale of one to ten in Misiaszek's April 8, 2013, IAPR, and Misiaszek's July 11, 2013, IAPR, the last one in the administrative record, reveals that Plaintiff had self-reported a further increase to a ten on a scale of one to ten for both anxiety and depression, secondary to being very physically ill.  (T. at 351, 355.)

### 4.    Consultative Psychologist Alan Dubro, Ph.D.

The ALJ also gave "little weight" to the opinion of State psychologist Alan Dubro, Ph.D., who did a consultative psychiatric evaluation of Plaintiff on February 13, 2013.  (T. at 53, 338-42.)  After examining Plaintiff, Dr. Dubro opined that Plaintiff would have moderate to marked limitation in most areas of mental functioning required for work related activities.  (T. at 341.)  According to Dr. Dubro, Plaintiff presented with paranoid and delusional thinking regarding medication she had been taking on a long term basis.  *Id.*  Dr. Dubro wrote that Plaintiff

> has come to believe, in a delusional manner, that the [medication] has "ruined her body."  Despite her primary care doctor telling her to use the [medication] only on a p.r.n. basis, the claimant reports that she takes [medication] on a daily basis, and sometimes "doubles on her dose."  The claimant reported that she has

---

prescribed for schizophrenia and bipolar disorder.  *See* http://www.pdr.net/drub-summary/Seroquel-quetiapine-fumarate-2185.6108 (last visited 8/29/16).  It appears that Seroquel may also be used in combination with antidepressants to treat major depressive disorder.  *See* https://www.seroquelrx.cpm/major-depressive-disorder/seroquel-xr-for-depression.html (last visited 8/29/16).

> "become addicted to [the medication.]"  She reported that this was
> "some kind of plot to make her ill."  The claimant does report
> paranoid and delusional thinking in that she believes everyone
> knows [about her disease].  She reports that she has no direct
> evidence for this, but she "knows it is true."  Additionally, the
> claimant reports experiencing auditory hallucinations on a regular
> basis, telling her that she is "a bad person."

(T. at 339.)

Plaintiff was described as cooperative during the exam and presenting "in a marginal manner." *Id*.  Plaintiff appeared tense and anxious with a blunted affect during the exam and frequently scanned the room and wanted to know if "people were listening in on our conversation." (T. at 340.)  Dr. Dubro found Plaintiff's attention and concentration impaired secondary to a formal thought disorder. *Id*.  Plaintiff was able to perform simple mental math with repetition and slowly but could not perform more difficult calculations even with repetition. *Id*.  Plaintiff could not perform an arithmetic word problem mentally. *Id*.

Plaintiff's recent and remote memory skills were found to be impaired secondary to a formal thought disorder. *Id*.  Dr. Dubro found Plaintiff's insight to be limited and her judgment impaired secondary to psychiatric symptoms. (T. at 341.)  Plaintiff reported that she was too anxious and paranoid to focus long enough to do any chores outside of her home and did not socialize with the exception of being with her son. *Id*.

Dr. Dubro included a medical source statement in his evaluation and listed the following assessments of Plaintiff's limitations: the claimant could understand directions and instructions but displayed marked difficulty in her ability to attend, remember, and to follow directions and instructions. *Id*.  He found that Plaintiff's attention span and concentration were markedly impaired, and that she was seen as someone who would experience marked difficulty in learning

new tasks.  *Id*.  Plaintiff was found to display moderate difficulty in her ability to perform daily tasks independently and on a regular basis and marked difficulty in her ability to perform complex tasks independently and on a regular basis.  *Id*.  Plaintiff was found to display marked difficulty in her ability to interact with others, in her ability to make day-to-day decisions, and in her ability to attend to a routine and maintain a schedule.  *Id*.  Dr. Dubro concluded that the results of the exam were consistent with psychiatric problems which significantly interfered with Plaintiff's ability to function on a daily basis.  *Id*.

Dr. Dubro diagnosed Plaintiff with schizophrenia, paranoid type and indicated she should continue to receive psychiatric treatment.  (T. at 342.)  He found Plaintiff's prognosis to be guarded.  *Id*.

The ALJ acknowledged that Dr. Dubro had found Plaintiff would have moderate to marked limitations in most of the areas of mental functioning required for work related activities. (T. at 53.)   She gave little weight to Dr. Dubro's opinion because it was based upon a "one-time examination of the claimant during which she exhibited symptoms of paranoia rarely exhibited elsewhere in the record and not mentioned at all in the most recent mental health treatment notes." *Id*.  The ALJ used as an example, NP Talarico's April 22, 2013, treatment note in which she had found Plaintiff's insight to be improving and impulse control good; noted Plaintiff's denial of auditory or visual hallucinations and any suicidal or homicidal ideation.  (T. at 53, 361.) The ALJ did not specifically acknowledge NP Talarico's suspicion that Plaintiff was having some paranoia with the fact that she thought people were watching her set forth in her July 27, 2012, psychiatric evaluation of Plaintiff.  (T. at 53, 369.)

**C.    The ALJ's Duty to Develop the Record**

It is the rule in the Second Circuit that given the essentially non-adversarial nature of a benefits proceeding "the ALJ, unlike a judge in a trial, must [her]self affirmatively develop the record." *Echevarria v. Secretary of Health and Human Services*, 685 F.2d 751, 755 (2d Cir. 1982).  The duty exists even where the claimant is represented by counsel.  *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996).  Where there are gaps in the administrative record, it is appropriate for the court to exercise its power under 42 U.S.C. § 405(g) to remand the case to the Commissioner for further proceedings.  *See Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999). "[W]hen further findings would so plainly help to assure the proper disposition of [the] claim . . . remand is particularly appropriate."  *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004) (quoting *Rosa*, 168 F.3d at 83) (internal quotation marks omitted).

The Court finds that there are gaps in the administrative record in this case with respect to Plaintiff's mental health records that warrant remand for further development of the record.  It seems significant that all three of the mental health professionals who examined Plaintiff, including a State consultative psychologist and the two professionals who were treating her on a regular basis, found her to have marked to extreme limitations in many, if not most, areas of mental functioning required for work related activities.  Yet, as the ALJ found, there is sparse evidence in NP Talarico's treatment notes and LMSW Misiaszek's IAPRs included in the record to support the shared opinions of the three.

As noted above, however, there are no treatment records from NP Talarico after April 22, 2013, and no IAPRs from LMSW Misiaszek after July 11, 2013, in the administrative record,

though Plaintiff testified at the hearing that she was still being treated by NP Talarico and LMSW as of that time. (T. at 84-85.) Despite the lack of medical evidence explaining or supporting the largely unanimous opinions in the medical source statements, neither the ALJ nor Plaintiff's counsel raised the issue of whether the lack of treatment notes from NP Talarico for six months prior to the hearing, and the lack of IAPRs from LMSW Misiaszek for three months prior to the hearing, created a gap in the administrative record. (T. at 64-105.) There was no discussion as to whether requests should be made for additional records, or whether additional information supporting the opinions in their medical source statements should be requested from NP Talarico and LMSW Misiaszek. *Id.*

There is evidence in NP Talarico's treatment notes that shows while Plaintiff appeared to be showing good progress in her treatment, in March 2013 she showed signs of worsening depression and anxiety. (T. at 362.) LMSW Misiaszek's IAPRs reveal that Plaintiff's depression and anxiety, self-reported on a scale of one to ten, continued to rise during treatment from a one in October 2012, to a ten by July 11, 2013. (T. at 351, 355, 357, 359.) In addition, as noted above, by the time of the hearing in November 2013, Plaintiff had gone from taking BuSpar, Zoloft, and tramodone to instead taking Xanax and Seroquel. (T. at 292, 361.) The absence of treatment records from NP Talarico from the end of April 2013 through the time of the hearing, and the absence of IAPRs from LMSW Misiaszek from early July 2013 through the time of the hearing, leave unclear why there was a significant change in Plaintiff's medication and whether her depression and anxiety continued to worsen prior to the time of the hearing. It is reasonable to conclude that it is possible that any additional records might shed light on why all three mental health professionals who examined or treated Plaintiff found such marked or extreme limitations.

Additional evidence submitted to the Appeals Council also supports the conclusion that there is a gap in the administrative record. The Court finds that LMSW Misiaszek's September 26, 2014, Medical Source Statement (Mental) does not provide new and material evidence as it differs insignificantly from the information provided in his April 17, 2013, Mental Capacity Assessment and the October 4, 2013, joint Medical Source Statement of Ability to Do Work-Related Activities (Mental) he submitted with NP Talarico. (T. at 347-48, 393-95.) However, NP Talarico's April 2, 2014, Notification of Temporary Assistance Work Requirements Determination (Exempt), while generated after the ALJ's November 25, 2013, decision, contains new evidence that is material to the issue of whether there is a gap in the administrative record. (T. at 424-26.) Specifically, the Notification reveals that as of April 2, 2014, Plaintiff was taking Elavil, 50 mg; Seroquel, 25 mg; Zoloft 100 mg; and Xanax, .25 mg three times a day for depressive disorder, anxiety disorder, and PTSD.[6] (T. at 425.) The significant increase in Plaintiff's medication within five months after the hearing arguably calls into question the severity of Plaintiff's mental health impairments at the time of the hearing and warrants remand for the purpose of further development of the administrative record with, at the very least, consideration of any of NP Talarico's treatment notes and LMSW Misiaszek's IAPRs generated through the date of the ALJ's decision

## VI.    CONCLUSION

For the reasons stated herein, the Court recommends that the case be remanded to the Commissioner for further development of the administrative record in accordance herewith.

---

[6] Elavil was a tricyclic antidepressant. *See* www.pdr.net/drug-summary/Amitriptyline-hydrochloride-1001.5733 (last visited 8/29/16).

Because the Court is recommending remand for further development of the administrative record, the issues raised by Plaintiff with regard to the ALJ's determination that Plaintiff's conditions failed to meet the requirements for a listed impairment and her evaluation of Plaintiff's credibility are not addressed herein.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that the case be **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[7] for further administrative proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: August 30, 2016
Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

---

[7] Sentence four reads "[t]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for rehearing." 42 U.S.C. § 405(g) (2005).